WASHINGTON *v.* STATE.

Opinion delivered June 17, 1907.

1.  HOMICIDE—EVIDENCE—THREATS.—Evidence in a murder case that, during the afternoon before the killing occurred, defendant told certain witnesses that he was going to kill a man that day was not admissible as tending to show a general malevolent and wicked disposition on defendant's part, and the prejudice caused by its admission was not cured by its subsequent withdrawal by the court where, aside from it, there was little evidence that the killing was done with premeditation and after deliberation. (Page 271.)

2.  SAME—MODIFICATION OF SENTENCE.—Where, on appeal from a conviction of murder in the first degree, there was ample evidence of murder in the second degree, but not of murder in the first degree, aside from evidence that was improperly admitted, though subsequently withdrawn by the court, the cause, with the consent of the Attorney General, will be reversed with direction to sentence defendant for murder in the second degree. (Page 271.)

Appeal from Woodruff Circuit Court; *Hance N. Hutton,* Judge; affirmed with modification.

*H. M. Woods,* for appellant.

1. Where a party, accused of a capital offense by an indictment returned on the second day of the term, has been unable

to procure counsel until the third day of the term, and where unserved process is out to procure attendance of witnesses in his behalf, it is an abuse of discretion and prejudicial error to refuse a motion on the fifth day for continuance to a later day in the same term.

2. It was error to admit the testimony of witnesses to the effect that in the afternoon before the night of the killing defendant had said that he had lost $2.50 and that he was "going to kill a—— —— nigger before night," there being no testimony to show that the deceased was present at the time or that such remarks, if made, were directed toward him. . It was further erroneous to permit the State's attorney to argue that this testimony went to prove malice, and to "show a general malevolent spirit and wicked and abandoned disposition on the part of defendant" etc.  82 Ark. 58; 73 Ark. 152; *Id.* 437; 70 Ark. 610; 52 Ark. 303.  The prejudicial effect of such testimony and such argument could not be removed by the subsequent effort of the court to withdraw it from the consideration of the jury. 76 Ark. 366; 61 Ark. 138; 123 Ill. 333; '71 Ark. 418; 70 Ark. 305; 72 Ark. 461 ; 58 Ark. 368; 66 Ark. 16; 65 Ark. 620.

*William F. Kirby,* Attorney General and *Daniel Taylor,* Assistant, for appellee.

1. There is no record of the filing of a motion for continuance, and nothing to indicate any ruling of the court thereon.  It is not properly incorporated in the record, no exception appears, and will not be considered here.

2. The testimony of witnesses as to statements made by defendant in the afternoon before the killing was inadmissible; but the withdrawal of this testimony and the argument based thereon from the jury could hardly have been couched in stronger language, and it must be presumed that the jury gave no heed to this testimony, but based their verdict upon other evidence which was competent and sufficient.  Elliott's Appellate Proc. 701-2; 43 Ark. 99; 102 U. S. 451.

3. If it is held that the evidence is not sufficient to sustain a verdict for murder in the first degree, then it is submitted that it is ample to support a verdict for murder in the second degree, and that the case should be affirmed for that degree. 56 Ark. 8; 82 Ark. 97.

McCulloch, J. Appellant was convicted of murder in the first degree under an indictment charging him with the killing of one George Motto. The killing is admitted. It occurred on Christmas eve, in Woodruff County, a few miles distant from Augusta. Appellant and a number of other persons, all being negroes, left town in a wagon, and most, if not all, of them were intoxicated. The deceased was of the party, but was on horseback. The evidence shows that a controversy arose between two parties in the wagon, and that a fight between them ensued. One of the parties, Seeks, threw the other one, Davis, out of the wagon. The appellant drew his pistol and undertook to make Seeks get out of the wagon. About this time deceased came up to the side of the wagon and said, "Don't shoot Frank," meaning Seeks. Whereupon appellant shot him. This is the substance of the testimony as detailed by eye witnesses introduced by the State, though there are some slight variances between their statements. One of the witnesses states that appellant first called out to deceased not to come up to him, and that deceased replied, "Yes, G— d— you, I will come." And that the appellant thereupon shot him.

Appellant himself testified that when he shot the deceased the latter was approaching him with a knife in a threatening attitude, and that he fired because he thought the deceased was about to cut him.

The State was allowed to show in rebuttal by certain witnesses that during the afternoon preceding the killing, while appellant was in the town of Augusta, he said he was "going to kill a man this day," and had a pistol in his coat. The prosecuting attorney in his closing argument, over the objection of the defendant, argued that this testimony tended to show a general malevolent spirit and wicked disposition on the part of the appellant, and that it showed an intent on appellant's part when he left the town that night to kill some one

After the argument had been closed and the case submitted to the jury, but on the following day before the verdict had been returned, the court recalled the jury and withdrew from their consideration the testimony just referred to. It is insisted by counsel for appellant that the court erred in admitting this testimony, and that the prejudice was not removed by the

subsequent withdrawal of it from the consideration of the jury.

The evidence was substantially the same as that in the case of *Deal* v. *State*, 82 Ark. 58, which was reversed for the same error. The only distinction between that case and this is that the court in this case withdrew the evidence before the jury returned a verdict.

It is difficult at all times for an appellate court to determine, when error has been committed by the trial court in the admission of evidence, whether or not the prejudice resulting therefrom has been completely removed by the withdrawal of the evidence. Much must be yielded under such circumstances to the fair discretion of the trial court, and ordinarily the presumption must be indulged that the jury regarded the final instruction of the court and based their verdict upon legal testimony only: *Carr* v. *State*, 43 Ark. 99. But upon a fair consideration of this case we are convinced that the jury, in making up its verdict, must have been controlled to some extent by the improper evidence. It must have had some weight with the jury in determining whether or not the kiling was done with premeditation and after deliberaton. For there is scarcely any evidence tending to establish those elements which are essential in the crime of murder in the first degree. It is doubtful whether the evidence, aside from this, is sufficient to sustain the verdict as to the highest degree of homicide, though we need not determine that now.

However, in view of the fact that the evidence of premeditation is so slight, we are compelled to believe that the testimony had more or less weight with the jury, notwithstanding the court's attempt to withdraw it from their consideration.

Upon consideration of the whole evidence, we think that this was the only prejudice that resulted to the defendant, as the testimony was overwhelmingly to the effect that the kiling was done by the appellant without any just provocation. The evidence abundantly sustains a conviction of murder in the second degree.

Other questions are argued on behalf of appellant, but we find no other error in the record and nothing of sufficient importance to call for discussion in this opinion.

The judgment of conviction for murder in the first degree

is therefore reversed and set aside; and, unless the Atorney General within fifteen days of this date elects to have the cause remanded for a new trial, the conviction of murder in the second degree will be affirmed, and the cause will be remanded with directions to the circuit court to fix the punishment and sentence the defendant for that offense.

HILL, C. J., not participating.

BATTLE, J., dissents, holding that the case should be remanded for a new trial.